IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HCA HEALTH SERVICES OF VIRGINIA, INC.,
d/b/a HENRICO DOCTORS' HOSPITAL,
Plaintiff,

v.   Civil Action No. 3:19-cv-406

CORESOURCE, INC., et al.,
Defendants.

## OPINION

In 2015, a child died at Henrico Doctors' Hospital[1] following complications from a premature birth. The Hospital later sought to recover the costs of the child's extensive medical care from the child's insurance provider, CoreSource, Inc. ("CoreSource"). In this breach of contract action, the Hospital alleges that CoreSource underpaid and wrongly imposed a penalty on the Hospital for the costs of the child's medical treatment. The Hospital participates in a network of national preferred provider organizations administered by Multiplan, Inc. ("Multiplan"), which connects health care providers to insurers. To become part of Multiplan's network, the Hospital and Multiplan entered into a Participating Facility Agreement (the "PFA"). The Hospital contends that the PFA imposes an obligation on Multiplan to require CoreSource to comply with the terms of the PFA, including correctly paying the Hospital.

Multiplan has moved to dismiss for failure to state a claim, arguing that the Hospital has not identified any provision of the PFA that it breached and that the PFA insulates it from liability. Because the Hospital plausibly pleads that Multiplan breached the PFA, the Court will deny Multiplan's motion to dismiss.

---

[1] The plaintiff is HCA Health Services of Virginia, Inc., which does business as Henrico Doctors' Hospital. The Court will refer to the plaintiff simply as "the Hospital."

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

The Hospital and Multiplan entered into the PFA on August 1, 2002. Under the PFA, the Hospital agreed to provide healthcare services and accept reimbursement from Multiplan's "Payors" or "Clients" at a reduced rate. As a Multiplan Client, CoreSource has access to Multiplan's PPO Network, which includes the Hospital. CoreSource pays Multiplan to access the PPO Network "based upon on a percentage of the discount CoreSource receives from the billed charges of Participating Providers in the Multiplan PPO Network." (Dk. No. 19, at ¶ 17.)

In 2015, a child died in the Hospital's neonatal intensive care unit following a premature birth. When the Hospital sought reimbursement from CoreSource, CoreSource paid the Hospital $586,484.60 less than the Hospital spent on the child's care. CoreSource explained that it reduced the Hospital's reimbursement in part due to "billing errors" and as an "authorization penalty." (*Id.* at ¶¶ 26-27.)

The Hospital relies on two provisions of the PFA to support its claim against Multiplan. First, section 3.1(a) of the PFA provides, "[t]he Payor shall pay the Participating Provider for such services rendered in accordance with the terms and under the express conditions of this Agreement." (Dk. No. 25-1, at § 3.1(a).)[2] According to the Hospital, section 3.1(a) means that "Multiplan agreed to require [CoreSource] to compensate the Hospital 'in accordance with the

---

[2] A Rule 12(b)(6) motion gauges the sufficiency of a complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016). Accordingly, in evaluating such a motion, courts typically focus only on the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference. *Id.* at 166. In appropriate cases, however, courts may also (1) take judicial notice of public records, such as state court records, and (2) consider documents submitted by the movant if the documents are integral to the complaint and indisputably authentic. *Id.*; *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). Here, Multiplan attached a copy of the PFA to its brief in support of its motion to dismiss, and the Hospital does not dispute its authenticity. The Court, therefore, will consider the PFA in evaluating the Hospital's claim against Multiplan.

2

terms and under the express conditions' of the PFA." (Dk. No. 19, at ¶ 13.) Second, section 4.1(i) of the PFA provides, "Multiplan warrants that its Client contracts obligate Payors to comply with all requirements and responsibilities in [the PFA]." (Dk. No. 25-1, at § 4.1(i).) In other words, Mutliplan "represented to the Hospital that its contracts with Clients . . . obligate Payors to comply with all requirements and responsibilities in the PFA." (Dk. No. 19, at ¶ 13.)

Multiplan has moved to dismiss for failure to state a claim, arguing that the Hospital has failed to identify any provision of the PFA that Multiplan breached and that the PFA shields it from liability.

## II. DISCUSSION[3]

To state a claim for breach of contract under Virginia law, a plaintiff must plead facts showing "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage caused by the breach of that obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Multiplan argues that the Hospital has not identified any provision of the PFA that it breached. *Id.*

The Hospital contends that Multiplan breached sections 3.1(a) and 4.1(i) of the PFA. First, the Hospital asserts that section 3.1(a) imposes an obligation on Multiplan to require CoreSource

---

[3] Multiplan has moved to dismiss pursuant to Federal Rule of Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

to pay the Hospital "in accordance with the terms and under the express conditions" of the PFA. (Dk. No. 19, at ¶ 13.) Second, the Hospital argues that section 4.1(i) obligates Multiplan to require CoreSource "to comply with all requirements and responsibilities in the PFA." (*Id.*)

The Hospital alleges that Multiplan breached sections 3.1(a) and 4.1(i) when it failed to require CoreSource to correctly reimburse the Hospital. Taken as true, the Hospital's allegations plausibly show that Multiplan breached sections 3.1(a) and 4.1(i) of the PFA.

Multiplan argues that section 4.1(f) of the PFA insulates it from liability in this case. Section 4.1(f) of the PFA provides, "Multiplan shall not be responsible or liable for any claims decisions or for the payment of any claims submitted by any provider . . . [and] shall not be an insurer, guarantor, or underwriter of the responsibility or liability of any Client." (Dk. No. 25-1, at § 4.1(f).) The Hospital does not allege that Multiplan qualifies as "an insurer, guarantor, or underwriter of the responsibility or liability" of CoreSource. (*Id.*) Instead, the Hospital merely seeks to hold Multiplan liable for allegedly breaching its obligations under sections 3.1(a) and 4.1(i) of the PFA. Multiplan, therefore, cannot use section 4.1(f) as a shield to avoid liability at this juncture. *See Sarasota Cty. Pub. Hosp. Dist. v. Multiplan, Inc.*, No. 8:18-cv-252, 2018 WL 4698459, at *4 n.4 (M.D. Fla. Oct. 1, 2018) (rejecting a similar argument advanced by Multiplan as "misguided").

Although the Court "takes no position on the ultimate validity of [the Hospital's] claim, . . . the Court cannot at this juncture conclude that [the Hospital] is not entitled to relief." *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 511 (E.D. Va. 2014). The Court, therefore, will deny Multiplan's motion to dismiss.

4

## III. CONCLUSION

Because the Hospital plausibly pleads a breach of contract claim against Multiplan, the Court will deny Multiplan's motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 4 November 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

5