IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HCA HEALTH SERVICES OF VIRGINIA, INC.,
d/b/a HENRICO DOCTORS' HOSPITAL,
      Plaintiff,

v.                                                Civil Action No. 3:19-cv-406

CORESOURCE, INC., et al.,
      Defendants.

## OPINION

In 2015, a premature infant died at Henrico Doctors' Hospital (the "Hospital"). After providing healthcare services to the infant, the Hospital sought reimbursement from CoreSource, Inc. ("CoreSource"). CoreSource is a claims processer for Delaware American Life Insurance Company ("DelAm"), which issued an insurance policy to the infant's father. The Hospital alleges that CoreSource underpaid it for the services it provided to the infant and wrongfully imposed an "authorization penalty" on the Hospital. Multiplan, Inc. ("Multiplan"), organizes a network of healthcare providers, including the Hospital, and connects them with third-party administrators and insurers, including CoreSource and DelAm.

The Hospital has sued CoreSource, DelAm, and Multiplan, asserting claims for breach of contract against all three entities. The defendants have moved to dismiss for failure to state a claim, arguing that the Hospital's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), and that the Hospital has otherwise failed to state a claim for relief. For the reasons set forth below, the Court concludes that ERISA does not preempt the Hospital's claims. The Hospital, however, has failed to state a claim against DelAm in Count Six. Accordingly, the Court will grant in part and deny in part the defendants' joint motion to dismiss.

## I. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

This case involves a complex web of contracts, healthcare providers, insurance companies, and claims administrators. Because at least three different contracts are at issue in this case, the Court begins by briefly explaining the nature of the parties and their contractual relationships.

### *A. The Three Contracts*

The first contract—the Participating Facility Agreement (the "PFA")—governs the relationship between the Hospital and Multiplan. (Second Amend. Compl. ¶ 12.) The Hospital and Multiplan entered into the PFA on August 1, 2002. (*Id.*) In exchange for access to Multiplan's network, the Hospital provides healthcare services at a discounted rate to Multiplan's "Payors" or "Clients." (*Id.* ¶ 14.) The Hospital alleges that Multiplan breached the PFA by failing to require CoreSource to pay the Hospital at the agreed upon discounted rates. (*Id.* ¶ 39.)

The second contract—the Client Services Agreement (the "CSA")—governs the relationship between CoreSource and Multiplan. (*Id.* ¶ 43; Dk. No. 72-3.) CoreSource and Multiplan entered into the CSA on October 1, 2013. Under the CSA, CoreSource became a Multiplan "Client." (Second Amend. Compl. ¶ 43.) The Hospital asserts that CoreSource breached the CSA "[b]y failing to pay the Hospital or ensure compliance with the terms set forth in the PFA for the services rendered by the Hospital." (*Id.* ¶ 46.) Although the Hospital is not a party to the CSA, it contends that it qualifies as a third-party beneficiary under that contract. (*Id.* ¶ 44.) In the alternative, the Hospital asserts claims against CoreSource for breach of oral contract, breach of an implied-in-fact contract, and unjust enrichment. (*Id.* ¶¶ 48-70.)

The third contract—the Administrative Services Agreement ("ASA")—governs the relationship between CoreSource and DelAm. (Second Amend. Compl. ¶ 72; Dk. No. 72-4.) CoreSource, a third-party claims processor, and DelAm, an insurance provider, entered into the

ASA on June 1, 2015. The ASA sets forth the terms under which DelAm pays CoreSource. (*See* Dk. No. 72-4, at 7, 37-40.) The Hospital contends that DelAm breached the ASA by "[f]ailing to pay the Hospital in accordance with the terms set forth in the PFA for the services rendered by the Hospital." (Second Amend. Compl. ¶ 75.) Although the Hospital is not a party to the ASA, it says that it qualifies as a third-party beneficiary under that contract. (*Id.* ¶ 73.)

### B. *The Events Giving Rise to this Case*

In 2015, an infant died in the Hospital's neonatal intensive care unit. (Second Amend. Compl. ¶ 21.) The infant's father's health insurance plan with DelAm, administered by CoreSource, covered the Hospital's services. (*Id.* ¶ 23.) When the Hospital sought reimbursement from CoreSource, CoreSource significantly underpaid the Hospital. (*Id.* ¶¶ 27-31.) The Hospital alleges that CoreSource underpaid it by $276,675.08 for unspecified billing errors and by $365,134.97 for an "authorization penalty." (*Id.* ¶¶ 29, 30.) CoreSource also reduced the Hospital's reimbursement pursuant to a "PHCS Discount," which was "greater than and inconsistent with the discount provided by the PFA for timely payment." (*Id.* ¶ 31.)

The Hospital seeks to hold CoreSource, Multiplan, and DelAm liable for the underpayment under the three contracts described above and under alternative theories of liability. The Hospital asserts the following claims in the second amended complaint: breach of the PFA against Multiplan (Count One); breach of the CSA against CoreSource (Count Two); in the alternative, breach of oral contract against CoreSource (Count Three); in the alternative, breach of implied-in-fact contract against CoreSource (Count Four); unjust enrichment against CoreSource (Count Five); and breach of the ASA against DelAm (Count Six).

The defendants have moved to dismiss the second amended complaint for failure to state a claim, arguing that ERISA preempts the Hospital's claims. In the alternative, the defendants argue

3

that the Hospital has failed to state a claim against CoreSource in Counts Two to Five and against DelAm in Count Six.

## II. DISCUSSION[1]

### A. ERISA Preemption

First, the defendants argue that ERISA preempts the Hospital's claims. Congress enacted ERISA to protect the interests of participants in employee benefit plans by providing a "uniform regulatory regime over [such] plans." *Aetna Health Inc. v. Davila*, 54 U.S. 200, 208 (2004). To that end, ERISA "includes expansive pre-emption provisions . . . to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* Thus, "ERISA preempts state law, including state common law." *Phx. Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 563 (4th Cir. 1994). Two types of preemption exist under ERISA: (1) complete preemption under § 502 of ERISA, 29 U.S.C. § 1132, and (2) conflict preemption under § 514 of ERISA, 29 U.S.C. § 1144(a).

#### *1. Complete Preemption*

The complete preemption doctrine arises under § 502 of ERISA. Section 502 presents an "integrated enforcement mechanism" for employee benefit plans, representing "careful balancing" of policy choices by Congress. *Davila*, 542 U.S. at 208-09. Section 502 has "such 'extraordinary

---

[1] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 209 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

"In other words, complete preemption is 'properly understood as a jurisdictional doctrine' which 'gives rise to removal jurisdiction.'" *Allen v. Unum Life Ins. Co.*, No. 3:15-cv-219-JAG, 2015 WL 5560072, at *2 (E.D. Va. Sept. 17, 2015) (quoting *Moon v. BMW Techs., Inc.*, 498 F. App'x 268, 272 (4th Cir. 2012) (per curiam)). Accordingly, when a state law claim falls within § 502's scope as a claim "to . . . recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA," "the state law claim is converted into a federal cause of action removable to federal court." *Marks v. Watters*, 322 F.3d 316, 323 (4th Cir. 2003). "By logical extension, a court does not need to evaluate a state law claim brought in federal court under complete preemption, as the issue of removal does not apply." *Allen*, 2015 WL 5560072, at *2.

Here, the Hospital initially sued CoreSource and Multiplan in state court. (*See* Dk. No. 1-4, at 6.) CoreSource and Multiplan removed the case to this Court "on the basis of diversity jurisdiction under 28 U.S.C. § 1332." (Dk. No. 1, at 1.) CoreSource and Multiplan did not invoke federal question jurisdiction under 28 U.S.C. § 1331 or argue that § 502 of ERISA completely preempted the Hospital's claims. Instead, the defendants have invoked § 502 months after Multiplan and CoreSource filed their notice of removal and in the midst of ongoing litigation in this Court. Moreover, neither party challenges the Court's subject matter jurisdiction. *Cf. Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) (declining to analyze the plaintiff's claims under the doctrine of complete preemption when neither party disputed the court's subject matter jurisdiction). Because the removability of the Hospital's claims from state

court is not at issue, the doctrine of complete preemption does not apply here. *See Allen*, 2015 WL 5560072, at *3.[2]

### 2. *Conflict Preemption*

Unlike complete preemption, a defendant may invoke conflict preemption "as a 'federal defense to the plaintiff's suit.'" *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186-87 (4th Cir. 2002) (quoting *Taylor*, 481 U.S. at 63). The conflict preemption doctrine arises under § 514 of ERISA. Under § 514, ERISA preempts state laws that "relate to" any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a); *see also Darcangelo*, 292 F.3d at 187. The Fourth Circuit has adopted a "pragmatic approach" to conflict preemption, emphasizing that courts should consider the "objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive preemption." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996).

"[T]he Supreme Court has explained that Congress intended to preempt at least three categories of state law under § 514: (1) laws that mandate employee benefit structures or their

---

[2] In any event, § 502 cannot completely preempt the Hospital's claims because this case involves a dispute over a "rate of payment" and not a "right to payment." *See Kearney v. Blue Cross & Blue Shield of N.C.*, 233 F. Supp. 3d 496, 504 (M.D.N.C. 2017). "In determining whether a claim falls . . . under § 502(a), courts distinguish between a 'rate of payment' claim and one of 'right to payment.'" *Id.* Section 502 preempts "right to payment" claims but does not preempt "rate of payment" claims. *Id.* A plaintiff asserts a "rate of payment" claim "if the dispute is over the amount or level of payment under a provider agreement." *Id.* In contrast, a "right to payment" claim "'challenge[s] coverage determination under ERISA plans,' such as what is 'medically necessary' or a 'covered service.'" *Id.* (alteration in original) (quoting *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010)). In this case, the Hospital does not contend that CoreSource made a coverage determination regarding the services the Hospital provided to the infant. Instead, the Hospital challenges CoreSource's decision to "reduce[ ] the Hospital's reimbursement by $365,134.94 for an 'authorization penalty' of 50 [percent]." (Second Amend. Compl. ¶ 30.) Thus, the Hospital disputes "the amount or level of payment" it received from CoreSource. *Kearney*, 233 F. Supp. 2d at 504. Because this case raises a "rate of payment" dispute, § 502 does not completely preempt the Hospital's claims.

administration, (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices, and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions." *Darcangelo*, 292 F.3d at 190 (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658-59 (1995)). Here, the defendants argue that the Hospital's claims fall within the third category and thus "relate to" an ERISA plan. *See* 29 U.S.C. § 1144(a). A claim "is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502." *Darcangelo*, 292 F.3d at 191.

In this case, the Hospital could not have brought its claims as an enforcement action under § 502 for the simple reason that ERISA "does not provide a cause of action for health care providers who treat ERISA participants." *In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1268 (S.D. Fla. 2001). Indeed, "preemption of state law claims would leave health care providers with no viable civil remedy." *Id.* "[P]reemption of provider contract claims," therefore, "would 'defeat rather than promote' ERISA's goal to 'protect the interests of employees and beneficiaries covered by benefit plans.'" *Id.* (quoting *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1259, 1533 (11th Cir. 1994)).

Accordingly, courts have held "with near unanimity . . . that independent state law claims of third party health care providers," like the Hospital, "are not preempted by ERISA." *Med. & Chirurgical Faculty of State of Md. v. Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d 618, 619 (D. Md. 2002) (collecting cases). Because the Hospital's claims do not "relate to" an ERISA plan, conflict preemption does not apply in this case. The Court, therefore, will deny the motion to dismiss based on ERISA preemption.

7

### B. *Failure to State a Claim*

In the alternative, the defendants argue that the Hospital has failed to state a claim against CoreSource in Counts Two to Five and against DelAm in Count Six, raising a number of alleged pleading deficiencies. The Court will address each Count in turn.[3]

#### *1. Count Two: Breach of the CSA Against CoreSource*

In Count Two, the Hospital asserts that CoreSource "breached its obligation to the Hospital as a third-party beneficiary of the [CSA]." (Second Amend. Compl. ¶ 46.) Specifically, the Hospital alleges that the CSA required CoreSource "to pay the Hospital in accordance with the terms set forth in the PFA for medical services rendered to members of CoreSource's health plans and health plans offered by CoreSource's clients." (*Id.* ¶ 43.) The defendants argue that the Hospital cannot state a breach of contract claim against CoreSource because the Hospital is not a party to the CSA and does not qualify as a third-party beneficiary to that contract.[4]

To state a breach of contract claim as a third-party beneficiary under New York law,[5] a party must plead facts showing "(1) the existence of a valid and binding contract between other

---

[3] In seeking to obtain dismissal under Rule 12(b)(6), the defendants raise several arguments that touch on the merits of the Hospital's claims. For example, the defendants ask the Court to dismiss this case on the grounds that "CoreSource is not liable for the payment of any amounts to the Hospital, even if any are owed." (Dk. No. 72, at 15.) Whether or to what extent CoreSource is liable to the Hospital is not an appropriate inquiry at this juncture. *See Martin*, 980 F.2d at 952 ("[I]mportantly, [a Rule 12(b)(6)] motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Thus, the Court will not consider any arguments for dismissal other than arguments concerning the sufficiency of the Hospital's allegations in the second amended complaint.

[4] Additionally, the defendants contend that the Hospital bases its claims against CoreSource and DelAm on the PFA, to which only the Hospital and MultiPlan are parties. But the Hospital does not seek to hold CoreSource or DelAm liable under the PFA. Instead, the Hospital alleges that CoreSource and DelAm separately agreed to adhere to certain terms of the PFA in different contracts. (*See, e.g.*, Am. Compl. ¶¶ 43, 72.)

[5] New York law governs the CSA. (Dk. No. 72-3, § K.3.)

8

parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him of the benefit is lost." *BDG Oceanside, LLC v. RAD Terminal Corp.*, 787 N.Y.S.2d 388, 390 (App. Div. 2005).

The defendants argue that the Hospital has failed to plead facts showing that the CSA "was intended for [the Hospital's] benefit." *Id.* In New York, a party qualifies as a third-party beneficiary when "the language of the contract . . . clearly evidences an intent to permit enforcement by the third-party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985). "[T]he parties' intent to benefit a third-party [must] be shown on the face of the contract." *Synovus Bank of Tampa Bay v. Valley Nat'l Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007) (applying New York law).

In this case, the plain language of the CSA supports the Hospital's allegation that it qualifies as a third-party beneficiary. Relevant here, the CSA provides that CoreSource

> shall abide by applicable requirements of the Network Provider Agreements[,] including the requirement that [CoreSource] shall pay or arrange for User to make payment to Network Providers at Contract Rates for Covered Services rendered to Participants within thirty (30) business days of receipt of a Clean Claim in order to obtain the benefit of the Contract Rate(s) unless otherwise required by applicable law or the applicable Network Provider Agreement.

(Dk. No. 72-3, § D.4.a.) The CSA further provides that "certain Network Providers in the PPO Network," such as the Hospital, "are third[-]party beneficiaries to this Agreement." (*Id.*)

Thus, the Hospital adequately pleads that the CSA "clearly evidences an intent to permit enforcement by the third-party." *Fourth Ocean Putnam Corp.*, 485 N.E.2d at 212. Because the plain language of the CSA suggests that CoreSource and Multiplan intended to benefit network providers such as the Hospital, the Court will deny the motion to dismiss Count Two.

*2. Counts Three and Four: Breach of Oral and Implied Contract Against CoreSource*

In Counts Three and Four, the Hospital pleads alternative claims against CoreSource, including breach of oral contract (Count Three) and breach of implied contract (Count Four). (Second Amend. Compl. ¶¶ 48-55, 56-64). The defendants argue that Counts Three and Four are duplicative of Count Two, and that the Hospital cannot plead that CoreSource breached both an express contract in Counts Two and Three and an implied contract in Count Four.

Federal Rule of Civil Procedure 8 allows a party to "set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Further, although a party may not receive duplicative recovery, "a plaintiff has the right to plead alternative theories of recovery." *SunTrust Mortg., Inc. v. Old Second Nat'l Bank*, No. 3:12-cv-99, 2012 WL 1656667, at *2 (E.D. Va. May 10, 2012). Accordingly, the Court will deny the motion to dismiss Counts Three and Four as duplicative at this juncture.

The defendants' argument that the Hospital cannot simultaneously assert claims for breach of express and implied contract is similarly unavailing. To be sure, "[w]here a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie." *WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 534 (4th Cir. 2000). But a plaintiff may assert both an express and implied contract claim in the alternative when the parties dispute whether an express contract exists between the parties. *Cf. Acorn Structures v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) (affirming the district court's dismissal of the plaintiff's unjust enrichment claim when the parties did not dispute that an express contract existed between the plaintiff and the defendant). Here, CoreSource disputes whether the Hospital

qualifies as a third-party beneficiary or may otherwise obtain relief under the CSA.[6] Thus, the Hospital may assert an implied contract claim in the alternative in Count Four. The Court, therefore, will deny the motion to dismiss Count Four.

### 3. *Count Five: Unjust Enrichment Against CoreSource*

In Count Five, the Hospital pleads an unjust enrichment claim in the alternative against CoreSource. To state a claim for unjust enrichment, a plaintiff must plead facts showing that "(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant knew of the benefit and reasonably should have expected to pay for it; (3) and the defendant accepted or retained the benefit without paying for its value." *Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467, 477 (E.D. Va. 2014). The defendants argue that the Hospital cannot show that it conferred any benefit on CoreSource.

The defendants' argument that the Hospital conferred a benefit on the infant, not CoreSource, misses the mark. Indeed, courts have held that healthcare providers may recover under an unjust enrichment theory of liability against entities responsible for reimbursing those providers. *See, e.g.*, *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, No. 5:12-CV-114-KSF, 2013 WL 1314154, at *4 (E.D. Ky. Mar. 28, 2013) (noting that the plaintiff "ha[d] only [the defendant] to look to for reimbursement for healthcare services provided to [the defendant's] members").

Here, the Hospital alleges that it "conferred a direct benefit on CoreSource by . . . providing medically necessary goods and services to the [infant]," and that "it would be inequitable for

---

[6] The Court has only concluded that the plain language of the CSA supports the Hospital's allegation that it qualifies as a third-beneficiary for purposes of a Rule 12(b)(6) motion. The Court, however, has not taken any position on the merits of the Hospital's argument that it is entitled to relief under the CSA. Thus, the Hospital's ability to assert a claim under the CSA remains in dispute.

11

CoreSource to fail to reimburse the Hospital for the full value of the medical goods and services rendered to the [infant] without paying for their value." (Second Amend. Compl. ¶¶ 66, 69.) Thus, the Hospital adequately pleads that it conferred a benefit on CoreSource. *Cf. Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019). The Court, therefore, will deny the motion to dismiss Count Five.

### 4. *Count Six: Breach of the ASA Against DelAm*

In Count Six, the Hospital asserts that DelAm "breached its obligation to the Hospital as a third-party beneficiary of the [ASA]." (Second Amend. Compl. ¶ 75.) Specifically, the Hospital alleges that the ASA required DelAm "to pay the Hospital in accordance with the terms set forth in the PFA for medical services rendered to members covered by DelAm insurance." (*Id.* ¶ 72.) The defendants argue that the Hospital cannot state a breach of contract claim against CoreSource because the Hospital is not a party to the ASA and does not qualify as a third-party beneficiary of that contract.

Under Illinois law,[7] "if a contract is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary." *City of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011) (applying Illinois law). "The intent to benefit the third party must affirmatively appear from the language of the contract." *Id.*

Here, the language of the ASA expressly provides that the parties did not intend to benefit third parties. Section 10.06 of the ASA, which has the title "No Third Party Beneficiaries," provides as follows:

> Except as otherwise specifically provided for herein, nothing in this Agreement is intended or shall be construed to give any person, other than the parties hereto, their

---

[7] Illinois law governs the ASA. (Dk. No. 72-4, § 10.11.)

12

successors and permitted assigns, any legal or equitable right, remedy[,] or claim under or in respect of this Agreement or any provision contained herein.

(Dk. No. 72-4, § 10.06.)

Because the express language of the ASA precludes third-party beneficiaries, the Hospital cannot assert a claim as a third-party beneficiary to that contract.[8] The Court, therefore, will grant the motion to dismiss Count Six. Because Count Six is the Hospital's only claim against DelAm, the Court will dismiss DelAm as a party to this case.

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendants' joint motion to dismiss. The Court will grant the motion as to Count Six and thus will dismiss Count Six with prejudice and will dismiss DelAm as a party to this case. In all other respects, the Court will deny the motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 17 Jul 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[8] The Hospital's vague allegation that some "other agreement" required DelAm to pay the Hospital does not save its claim against DelAm in Count Six. (Second Amend. Compl. ¶ 72.) To the extent that the Hospital seeks to rely on the PFA or the CSA to assert a breach of contract claim against DelAm, Illinois law precludes construing the PFA, CSA, and ASA together as one contract. Under Illinois law, courts will read two or more documents together "as one contract encompassing the entire agreement between the parties" when those documents "are executed by the same contracting parties as part of the same transaction." *Ill. Match Co. v. Chi., Rock Island & Pac. Ry. Co.*, 95 N.E. 492, 493 (Ill. 1911). Here, different parties entered into the PFA, CSA, and the ASA, and they did so years apart. Multiplan and the Hospital entered into the PFA on August 1, 2002. (Dk. No. 72-2, at 1.) Multiplan and CoreSource entered into the CSA on October 3, 2013. (Dk. No. 72-3, at 1.) CoreSource and DelAm entered into the ASA on March 1, 2015. (Dk. No. 72-4, at 3.) Thus, the Court must read the three contracts as separate documents.

13